Sarika Singh
McNeely, Hare & War LLP
12 Roszel Road., Suite C104
Princeton, NJ 08540
Phone: (609) 865-0579

*Attorney for Defendant-Counterclaim*
*Plaintiff Hochiki America Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NANO FIRE LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| HALMA PLC, HALMA HOLDINGS | ) | C.A. No. 2:23-cv-03562-BRM-CLW |
| INC., FIREPRO SYSTEMS LTD. and | ) | **JURY TRIAL DEMANDED** |
| HOCHIKI AMERICA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT HOCHIKI AMERICA CORPORATION'S RESPONSE IN OPPOSITION
TO PLAINTIFF NANO FIRE LLC'S MOTION FOR AUTHORIZATION TO INCLUDE
IN PARTIES' SECOND PROPOSED SCHEDULING ORDER, A DEADLINE FOR
PLAINTIFF TO AMEND PATENT INFRINGEMENT CONTENTIONS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................**Error! Bookmark not defined.**

II.    PROCEDURAL BACKGROUND .......................................................................................3

III.   LEGAL STANDARDS .......................................................................................................7

       A. Good Cause ..............................................................................................................7

       B. Diligence in filing Motion And Discovering Grounds for the Amendment ..................8

       C. Prejudice to Non-movant Party ..................................................................................9

       D. Change In Legal Strategy Or Disagreement with Former Counsel do Not
       Constitute Good Cause or Diligence..............................................................................9

IV.    ARGUMENT ..................................................................................................................11

       A. Plaintiffs' Motion Is Premature and Speculative .......................................................11

       B. Belated Product Testing Following Change of Counsel and Strategy Does Not
       Constitute Good Cause, or Diligence in Discovering Basis for the Amendment.............12

       C. Prejudice to Hochiki.................................................................................................15

V.     CONCLUSION................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Abraxis BioScience, LLC v. Actavis, LLC*, No. 16-1925, 2017 at 7, U.S. Dist. LEXIS 73400 at *2 (D.N.J. May 15, 2017) ......................................................................................................... 7, 13

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) ....................... 10

*AS America, Inc. v. MASCO Corp. of Ind.*, No. 13-05, 2013 WL 4084237, at *2 (D.N.J. Aug. 13, 2013) ............................................................................................................................................. 9

*AstraZeneca AV v. Hanmi USA, Inc.*, No. 11-760, 2011 WL 5526009, at *4 (D.N.J. Nov. 14, 2011) ............................................................................................................................................. 8

*Berger v. Rossignol Ski Co.*, No. C 05-02523, 2006 WL 1095914, at *4, *5 (N.D. Cal. Apr. 25, 2006) ..................................................................................................................................... 10, 11

*British Telecom PLC v. IAC/Interactive Corp.* , No. 1:18-cv-00366-WCB, D.I. 210 at 13 (D. Del. June 8, 2020)  ............................................................................................................... 10, 12

*Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, 2015 WL 4138982, at *4 (D.N.J. July 9, 2015) ............................................................................................................................................7

*Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738, 2020 WL 109063, at *4 (N.D. Cal. Jan. 9, 2020) ............................................................................................................................. 10

*FTC v. Roca Labs, Inc.*, Case No. 8:15-cv 2231, 2017 WL 11002078, at *2 (M.D. Fla. May 2, 2017) ......................................................................................................................................... 10

*Gesture Tech. Partners, LLC v. LG Elecs. Inc.*, Civil Action No. 21-19234 (EP) (MAH), 2024 U.S. Dist. LEXIS 137139, at *7-8 (D.N.J. Aug. 2, 2024) .................................................. 8

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No. CV 14-877, 2016 WL 7319670, at *3 (D. Del. Dec. 15, 2016) ................................................................................................................. 10

*IXI Mobile (R&D) Ltd., et al., v. Samsung Elec. Co. Ltd. and IXI Mobile (R&D) Ltd., et al. v. Apple Inc.*, No. 15-cv-03752-HSG, D.I.183 (N.D. Cal. Oct. 11, 2019) .................................... 9

*Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 U.S. Dist. LEXIS 28374 at *2-3, *5 (D.N.J. Feb. 28, 2013)........................................................................................................7. 9

*King Pharm., Inc. v. Sandoz Inc.*, No. 08-5974, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010) .......................................................................................................................................... 7

*La Jolla Spa MD, Inc. v. Avidas Pharms. LLC*, No.17-1124, 2018 WL 6523048, at *3 (S.D. Cal. Dec. 12, 2018) ............................................................................................................... 10

*Lyden v. Hogan Dedicated Servs., LLC*, No. 15-9289, 2016 WL 6778941, at *2 (D. Kan. *Nov.* 16, 2016) ............................................................................................................... 3, 11

*Marlowe Patent Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013) ............................................................................................................... 11

*Medtronic Sofamor Danek USA, Inc. v. Nuvasive, Inc.* Case No. 08 CV 1512, 2010 WL 11452386, at *2 (S.D. Cal. June 25, 2012) ........................................................................................... 10

*Nautilus Neurosciences*, Inc. v. Wockhardt USA LLC, No. 11 1997, 2013 WL 7901901, at *2, *7 (D.N.J. Jan. 23, 2013) ............................................................................................................... 7, 8

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355,1366. 1367-68 (Fed. Cir. 2006)..7, 8

*Quinn v. Deutsche Bank Nat'l Trust Co.*, Civil Action No. 13-115, 2014 WL 977632, at 4 & n.11 (S.D. Ala. Mar. 12, 2014) ............................................................................................... 11

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA 04-1436, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012) ......................................................... 11

*Takeda Pharm. Co. Ltd. v. Sun Pharma Global FZE*, No. 14-4616, 2016 WL 9229318, at *4 (D.N.J. May 16, 2016) ............................................................................................................... 8

*Wag Acquisition, LLC v. Gattyán Group S.à.r.l.,* No. 14-2832, 2020 WL 5105194, at *6 (D.N.J. Aug. 31, 2020) ............................................................................................................... 8

*IXI Mobile (R&D) Ltd., et al., v. Samsung Elec. Co. Ltd. and IXI Mobile (R&D) Ltd., et al. v. Apple Inc.*, No. 15-cv-03752-HSG, D.I.183 (N.D. Cal. Oct. 11, 2019) ...................................... 9

**Statutes and  Rules**

28 U.S.C. §1659 ............................................................................................................... 2

Local Patent Rule  3 .7 ........................................... .............................................. 1, 3, 7-9, 14

Defendants Hochiki America Corporation, ("Hochiki") submit its brief in support of their Opposition to Plaintiff Nano Fire LLC's (Nano Fire) motion for authorization to include in parties' Second Proposed Scheduling Order, a deadline for plaintiff to amend patent infringement contentions.

## I.    INTRODUCTION

Having initiated this action almost one year ago, and served its infringement contentions 8 months ago, Nano Fire now seeks the option to amend infringement contentions. Nano Fire admits it is currently not prepared to amend its contentions but nonetheless seeks authorization at some future date based on recently initiated but unfinished testing of the accused products. Nano Fire's only justification for its belated testing is an apparent change in strategy pursued by its newest substituted counsel.

Nano Fire fails to meet the required showing required by the local rules to amend its contentions.  Specifically, Nano Fire's motion should be dismissed as premature and speculative because Nano Fire does not know if and when it would actually serve amended infringement contentions, let alone the significance of the information it wishes to add.  In the absence of such information, the Court can neither assess if this new information provides good cause for amending the infringement contentions, nor decide if Nano Fire was diligent in discovering the grounds for the amendment.

Assuming for the sake of argument only that Nano Fire's motion is not dismissed for being premature and speculative, it must fail nonetheless. Nano Fire has not satisfied its burden of showing good cause for its potential amendment to its infringement contentions because:

-        testing of the allegedly infringing product could (and should) have been performed before filing this action (or at least long before now).   This is particularly true since no new information or actions by the defendants has triggered this newly initiated testing; and

-        a change in legal strategy and/or disagreement with strategy decisions of former counsel cannot constitute good cause. Such an outcome would completely defeat the purpose of the local rule and prejudice the Defendant.

Further, Nano Fire failed to diligently file this motion and certainly failed to diligently discover the grounds for the potential amendment by timely conducting any testing.

Nano Fire initially sought to make an end run around the local rule by including a new deadline to file infringement contentions.  In particular, Nano Fire proposed a completely new scheduling order (including a new date for infringement contentions) instead of amending the existing scheduling Order.  Nano Fire already timely served infringement contentions in compliance with the existing Scheduling Order.  Nano Fire's current motion was eventually filed upon Hochiki's insistence that Nano Fire comply with the Court's Patent Rules, which require leave of the Court and showing of good cause and diligence.

Moreover, Nano Fire attempts to show diligence is misleading at best and bad faith at worst.   Nano Fire's timing calculations excludes the time when the case was stayed, subsequent to Nano Fire's filing of a complaint for an International Trade Commission (ITC) investigation under 28 U.S.C. §1659 for the same infringement allegations, before eventually withdrawing[1] the complaint. Further, Nano Fire's calculation of diligence excludes the more than six months' time

---

[1] Nano Fire's litigation of the ITC case was conducted in the same lack of diligence, repeatedly postponing inspection, seeking extension to file terms for claim construction and then asserting that no terms needed to be construed.

2

it took to find new counsel after the previous counsel sought to withdraw. In this regard, constructive notice of withdrawal of the previous counsel at least as early as May 2024, when the previous counsel withdrew from the ITC proceedings, at least in part over a dispute regarding compensation. Throughout this extended period, Plaintiff appears to have failed to secure documents and records of these proceedings from the previous counsel.

Nano Fire's conduct is the opposite of diligence. These time periods cannot simply be excluded from the diligence inquiry because nothing prevented Nano Fire from testing the accused products during that time period. Indeed, counsel for co-defendants Halma Plc, Halma Holdings Inc., and Firepro Systems Ltd. (FirePro's) repeatedly asked Nano Fire if they had tested the accused products, both during proceedings in this case in early 2024 and also during the ITC litigation. Nano Fire's delay is nothing more than a strategic decision by counsel to not test the accused products. Nano Fire cannot now seek to show good cause to incorporate its yet undiscovered information from such belated testing into its infringement contentions now. The caselaw is clear on this issue, "[A] change in legal strategy or the errors of past counsel do not equate to due diligence." *Lyden v. Hogan Dedicated Servs., LLC*, No. 15-9289, 2016 WL 6778941, at *2 (D. Kan. Nov. 16, 2016).

## PROCEDURAL BACKGROUND

Hochiki does not dispute majority of facts and sequence of events laid out in Nano Fire's motion. However, certain omissions and misrepresentations by Nano Fire need to be addressed. Nano Fire's representations of Hochiki's counsel's during meet and confer are completely irrelevant to the Nano Fire's motion. Nano Fire claims Hochiki's counsel did not timely object to Nano Fire's proposed Scheduling Order and its improper introduction of a new infringement contention. This complaint is both irrelevant and absurd. Local rule 3.7 is clear and definitive as

3

to what is required in order to amend infringement contentions.  The undersigned explains the true sequence of events to clear the record but maintains it is irrelevant to the central issue of the motion.

As an initial matter, the burden of showing diligence is on the movant, Nano Fire, not defendant Hochiki. Further, Nano Fire's counsel sent their draft proposed Scheduling Order hours before the scheduled meet and confer, leaving little to no time to review it before the meeting. Moreover, while the counsel did mention ongoing testing, they did not request permission to serve a new set of infringement contentions.

Instead, of seeking Hochiki's authorization, Nano Fire's counsel sent an e-mail on Friday, April 25th stating that she would submit the circulated draft to the Court on Monday, without seeking express authorization from Hochiki or asking for edits. Nano Fire's counsel then erroneously assumed Hochiki's approval of the draft without waiting for confirmation from Hichiki's. Hochiki's counsel's e-mail communication of Friday, April 25th followed in response bringing up the issue of apparent "do over" of various activities, including filing of initial disclosures, and infringement contentions.   In short, Hochiki's counsel flagged the issue well before the draft was submitted to the court.  Nano Fire's fixation on these counsel communications is an obvious tactic to distract the court from its complete failure to follow the local rule.[2]

---

[2] Nano Fire's counsel repeatedly incorrectly states that Hochiki first brought up the issue on Saturday, April _26, 2025.  Hochiki has pointedly informed the counsel twice (in the letter dated April 30, 2025 to the Court, and subsequently in the in person meeting in the court on May 13, 2025) that the issue was first raised on Friday, April 25, 2025, well ahead of the April 30 deadline for filing proposed amended Scheduling Order. Only when Nano Fire's counsel did not respond to that e-mail did the Hochiki's counsel send the follow-up e-mail on Saturday, clearly informing Nano Fire of the relevant Patent rule regarding amendment of infringement contentions, and Hochiki's intention to oppose any potential motion to amend.
Even if Nano Fire's counsel somehow overlooked the e-mail of Friday, April 25, 2025, and only noticed the follow-up e-mail on Saturday or Monday, she still had three working days until the upcoming deadline of Wednesday. To

Instead, of complying with the local rule, Nano File willfully conveniently ignored the previously and timely served infringement contention.  Nano File proceeded to misrepresent to the Court that no infringement contentions had been served .  Counsel for Nano File now asserts that she drew a "strong inference" that such a document along with other documents required to be served had simply not been served, and none of the parties had adhered to the existing scheduling order. This assertion strains credibility. The only basis offered by the counsel for drawing this clearly erroneous "strong inference," is that the case was eventually stayed in late March 2024, following the initiation of ITC investigation, and the infringement contentions were due to be filed in early February 2024. Nonetheless, it was incumbent on counsel to know what is in her own files and her own failure in that regard should not be awarded to the detriment of Hochiki. c

Incredibly, Nano Fire now seeks to shift the onus to the defendant for not having produced any evidence regarding the infringement contentions in question. That is, Plaintiff appears to be blaming Hochiki for not informing Nano Fire's new counsel what documents her client previously served.  Although it should not need to be said, Plaintiff's counsel is responsible for knowing its own file (which took six months and revival of a dismissal). Defendants have no duty to acquaint Plaintiff's new counsel with the contents of its own file.

---

my surprise and dismay, Nano Fire's counsel did not respond to my e-mails and made no attempt to contact me on the phone or by e-mail to investigate or clarify the issue of a previously filed infringement contention (the existence of which would be the only logical conclusion from my e-mails), ask for a copy of that filing if she did not have independent access to it,  or otherwise attempt to reach some agreement on the draft proposed Scheduling Order (which she crafted from scratch instead of amending the previous Scheduling order, as required by the Court), as is customary practice in case of differences on any joint draft documents that parties are required to submit.

Moreover, at no stage did the counsel attempt to contact Hochiki's counsel to obtain a copy of the document in question, which Hochiki's counsel would have gladly shared.[3]

Nano Fire also raises the point that Hochiki took several extensions to file their answer to the complaint. Again, Hochiki pointing to these delays is Nano Fire's blatant attempt to ignore the actual local rule at issue. Plaintiff, nonetheless, should be aware that these extensions were taken with Plaintiff's approval to attempt to settle. Therefore, while irrelevant, the extensions were agreed to by both parties for legitimate litigation reasons.

In sum, Plaintiff's focus on counsel communications and minor delays cannot distract the court from the fact that Plaintiff failed to comply with the local rules or read its own files.

## II.    LEGAL STANDARDS

New Jersey Local Patent Rule 3.7 allows amendments to contentions "<u>only</u> by order of the Court upon a timely application and showing of good cause." The party applying for leave to amend contentions under Rule 3.7 must demonstrate that (1) the application is timely; (2) there is good cause for the amendment; and (3) the adverse party will not suffer undue prejudice if leave to amend is granted." *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, 2015 WL 4138982, at *4 (D.N.J. July 9, 2015).

---

[3] The counsel also make much of Hochiki's counsel's failure to respond immediately after filing her response letter almost at midnight the same day (April 30, 2025) under seal (to avoid making plaintiff's infringement contention charts public because they could contain proprietary information regarding the accused product). Hochiki's counsel is puzzled as to why this delay in response is an issue at all. Firstly, there was no official deadline for Hochiki to file a response to Nano Fire's counsel's letter filed earlier that day. Indeed, Hochiki's counsel had no prior notice that such a letter was being filed and acted with haste within a few hours, troubled by the numerous misrepresentations in her letter to the Court. Secondly, Hochiki's counsel did send the document before noon the next morning and is unsure about the significance of the half-day delay in serving the response letter to the Plaintiff.

The burden to demonstrate these criteria is on the moving party. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 WL 785067, at *2-3 (D.N.J. Feb. 28, 2013). "Sufficiently satisfying the elements set forth in Rule 3.7 is not a simple undertaking, and <u>requires the movant to overcome a substantial preference against granting the amendment</u>." *Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, No. 11 1997, 2013 WL 7901901, at *2 (D.N.J. Jan. 23, 2013); Emphasis Added. The Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *King Pharm., Inc. v. Sandoz Inc.*, No. 08-5974, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010); see also *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d. 1367-68 (Fed. Cir. 2006).

### A. Good Cause

"Non-exhaustive examples of circumstances that may, absent undue prejudice to the adverse party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art despite earlier diligent search; (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention . . . L. Pat. R. 3.7. As list is non-exhaustive, a court evaluating a motion to amend contentions may consider other factors, including, among others, the reason for the delay in seeking amendment and "the importance of the information to be excluded [or added]." *Abraxis BioScience, LLC v. Actavis*, LLC, No. 16-1925, 2017 WL 2079647, at *2 (D.N.J. May 15, 2017).

**B.  Diligence  in filing Motion And Diligence in Discovering Grounds for the Amendment**

To establish good cause, the moving party must "proceed with diligence in amending [its] contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd.*, 467 F. 3d at 1355, 1366. To establish diligence, movant must show that "it was diligent not only in moving to amend, but also in discovering the grounds for the amendment." *Gesture Tech. Partners, LLC v. LG Elecs. Inc.*, Civil Action No. 21-19234 (EP) (MAH), 2024 U.S. Dist. LEXIS 137139, at *7-8 (D.N.J. Aug. 2, 2024) (citing *O2 Micro Int'l, Ltd.*, 467 F.3d 1355,1366). See also *Wag Acquisition, LLC v. Gattyán Group S.à.r.l.,* No. 14-2832, 2020 WL 5105194, at *6 (D.N.J. Aug. 31, 2020) (affirming magistrate judge's denial of motion to amend contentions under Rule 3.7, finding movant had not demonstrated it diligently pursued information at issue in discovery or diligently filed the motion to amend); *Takeda Pharm. Co. Ltd. v. Sun Pharma Global FZE*, No. 14-4616, 2016 WL 9229318, at *4 (D.N.J. May 16, 2016) ("The party seeking to amend its contentions bears the burden of establishing diligence."); *Nautilus Neurosciences*, 2013 WL 7901901, at *2 (citing *O2 Micro Int'l* and holding that, to establish good cause, the party seeking leave to amend contentions "must demonstrate it acted diligently in discovering the basis for the proposed amendment.").

The moving party's diligence is the paramount consideration on a motion for leave to amend under Rule 3.7. *AstraZeneca AV v. Hanmi USA, Inc*., No. 11-760, 2011 WL 5526009, at *4 (D.N.J. Nov. 14, 2011) (holding that diligence is the "dominant consideration" in determining whether good cause exists under the Rule); see also *AS America, Inc. v. Masco Corp. of Indiana*, No. 13–05, 2013 WL 4084237, at *2 (D.N.J. Aug. 13, 2013) (holding movant must demonstrate it acted diligently to discover that an amendment was appropriate and moved to amend its

contentions promptly after learning an amendment was necessary). Waiting to amend

contentions "frustrates the purpose of the Local Patent Rules in shaping discovery." *Nautilus*

*Neurosciences*, 2013 WL 7901901, at *7 (finding a motion to amend invalidity contentions

untimely under Rule 3.7 where the moving party waited five months after it became aware of the

need to raise the proposed amendment).

### C.  Prejudice to Non-movant Party

If a court finds that that the movant has met its burden of proof on "diligence" and "good

cause", then the Court must also consider whether the non-moving parties, i.e., the Defendants,

would suffer prejudice if amendment is allowed. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No.

10-6108, 2013 U.S. Dist. LEXIS 28374 at *5 (D.N.J. Feb. 28, 2013).

### D.  Change In Legal Strategy Or Disagreement with Former Counsel do Not
### Constitute Good Cause or Diligence

"Courts have consistently held that the substitution of counsel does not support a finding

of good cause to make untimely amendments to infringement contentions, invalidity contentions,

or other pleadings.  Rather, the diligence inquiry must include an assessment of the diligence of

the original attorneys." *British Telecom PLC v. IAC/Interactive Corp.*, No. 1:18-cv-00366-WCB,

D.I. 210 at 13 (D. Del. June 8, 2020). See *GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No.

CV 14-877, 2016 WL 7319670, at *3 (D. Del. Dec. 15, 2016) ("new counsel's entry into a case

does not serve as a magic wand that enables the party to conjure up a showing of good cause");

*Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738, 2020 WL 109063, at *4 (N.D.

Cal. Jan. 9, 2020) ("[Defendant's] diligence arguments rest on new counsel's prompt search

along with its prompt disclosure of the systems after their discovery. . . .  That is not the

standard: 'The critical issue is not when [the party seeking to amend] discovered [the]

information, but rather, whether they could have discovered it earlier had it acted with the requisite diligence.'" (alterations in original) (citations omitted)); *La Jolla Spa MD, Inc. v. Avidas Pharms. LLC*, No.17-1124, 2018 WL 6523048, at *3 (S.D. Cal. Dec. 12, 2018) ("the fact that Plaintiff recently retained new counsel does not establish good cause"); *FTC v. Roca Labs, Inc.*, Case No. 8:15-cv 2231, 2017 WL 11002078, at *2 (M.D. Fla. May 2, 2017) ("[T]hat defendants have obtained new counsel and have embarked on new litigation strategies, are not sufficient to establish good cause."); *Berger v. Rossignol Ski Co.*, No. C 05-02523, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006) ("[T]he addition of co-counsel is not good cause. To hold otherwise would mean that a party could avoid the Local Rules simply by adding a lawyer to the pleadings."); *Medtronic Sofamor Danek USA, Inc. v. Nuvasive, Inc.* Case No. 08 CV 1512, 2010 WL 11452386, at *2 (S.D. Cal. June 25, 2012) (same); see also *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying, as based on "an insufficient reason," Ansam's request to amend its complaint on the ground that Ansam's prior counsel had failed to conduct substantive discovery and that it was only after new counsel was substituted that Ansam discovered the information that formed the basis of its new claim)."

"Courts have also uniformly held that a change in legal strategy does not constitute good cause to amend infringement or invalidity contentions. See *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA 04-1436, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012) ("A strategic mistake does not equate to a showing of good cause[.]"); *Lyden v. Hogan Dedicated Servs., LLC*, No. 15-9289, 2016 WL 6778941, at *2 (D. Kan. Nov. 16, 2016) ("A change in legal strategy or the errors of past counsel do not equate to due diligence."); *Quinn v. Deutsche Bank Nat'l Trust Co.*, Civil Action No. 13-115, 2014 WL 977632, at 4 & n.11 (S.D. Ala. Mar. 12, 2014) (disagreement with strategy decisions of former counsel is not good

cause); *Marlowe Patent Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013) ("Ex post facto disagreement with strategic decisions of counsel, made in the course of litigation, does not constitute good cause"); *Berger*, 2006 WL 1095914, at *5 (denying motion for leave to amend due to lack of good cause where "delay suggests that the omission of [certain patent infringement] contentions . . . were not 'errors,' but were instead a deliberate strategic course which plaintiffs now wish to change")."

### III.    ARGUMENT

#### A.  Plaintiffs' Motion Is Premature and Speculative

Having initiated this action almost one year ago, Nano Fire now seeks to secure a right to potentially amend infringement contentions at some future date based on testing of the accused products, a testing it has only recently initiated and still does not appear to have the results of. Nano Fire belatedly initiated this testing following an apparent change in strategy pursuant to the advice of its newest counsel.

Nano Fire's motion should be dismissed as premature and speculative because Nano Fire does not know if and when it would actually file amended infringement contentions, let alone the importance of the information it wishes to add. In the absence of such information, the Court can neither assess if the importance of the information to be added provides good cause for amending the infringement contentions, nor decide if Nano Fire was diligent in discovering the grounds for the amendment. i.e., conducting the testing and drawing conclusions therefrom.

#### B. Belated Product Testing Following Change of Counsel and Strategy Does Not Constitute Good Cause, or Diligence in Discovering Basis for the Amendment

<u>Good Cause and Diligence in discovering grounds for amendment</u>

Nano Fire was not diligent in testing the accused product to discover information underlying this motion - testing of the Accused Products. The time period for determining diligence in support of a finding of good cause should be measured from the date of initiating this action-not the date of Nano Fire hiring new counsel. The record clearly shows Nano Fire had more than enough time, almost an year, to conduct its testing. Nano Fire offers no good explanation for the delay in testing. NanoFire provided no good reason as to why it did not conduct tests on the accused product well before now to ascertain the information it now seeks to introduce into the case.  Instead, Nano Fire manufactures a dispute with counsel when it's clear that Nano Fire's new counsel simply disagrees with previous counsel's strategy.

In *British Telecom PLC v. IAC/Interactive Corp*. , No. 1:18-cv-00366-WCB, D.I. 210 at 13 (D. Del. June 8, 2020) defendant IAC argued that "good cause exists to add the new references because it added a new law firm to its defense team . . . and the new lawyers demonstrated due diligence by promptly locating the [prio art] references and promptly informing plaintiff of its intention to supplement its invalidity contentions . . ." The references were highly material. The court found "no force to IAC's argument that the presence of new counsel supports its claim of diligence." In Abraxis defendant sought to amend its invalidity contentions based on information it received <u>after</u> plaintiff's contentions were served. "Actavis's amendments do closely track and respond to secondary considerations contained in Celgene's response,", *Abraxis BioScience, LLC*, No.16-01925, 7 (D.N.J. May 15, 2017).

Thus, the proper focus of the diligence inquiry is not principally on Nano Fire's diligence in locating underlying information <u>afte</u>r new attorneys were engaged, but on whether it exhibited diligence in discovering the information from the outset of the litigation. See Id. at __.

Nano Fire attempts to exclude about 9 months from determination of diligence by asserting that time was tolled upon stay of these proceedings in view of ITC action. It was not. Nano Fire attempt to assert the period of diligence did not resume until the new counsel took over Nano Fire's representation, thus arriving at 2.5 months for showing of diligence. This is nonsense.

Plaintiff availed itself of another jurisdiction to litigate this infringement matter. led to the stay of these proceedings. Clearly Plaintiff initiated the ITC action, subsequently withdrew it, and knew of their intention to revive this case throughout this time. The purpose of stay of these proceedings during ITC litigation would be defeated if activities undertaken during that litigation for identical infringement issues are now ignored and that duration eliminated from the diligence calculus.

Further, Nano Fire showed no diligence in seeking new counsel and therefore, the delay in obtaining representation cannot be excluded when ascertaining diligence in undertaking testing of the accused product.

<u>Diligence in making the motion</u>

The proper timeframe for measuring diligence in making this motion begins with filing of the original infringement contentions and ends with filing of this motion to amend its Infingement Contention, excluding the time from ITC stay to reinstatement of these proceedings.

Plaintiff Nanofire sought to introduce a new scheduling order rather than amend the existing one as ordered by the Court. In doing so, Nano Fire attempted to sneak in amended/new infringement contentions in contravention of Rule 3.7 rather than diligently move for such amendment. When called out for their underhanded actions, Nano Fire now seeks to shift blame

13

on Defendant Hochiki, bizarrely asserting that Hochiki should have (preemptively) provided evidence/basis for asserting what should be the presumptive default position, absent evidence to the contrary, that the Parties complied with the existing Scheduling Order, including filing of infringement contentions by the Plaintiff. The focus on this motion is properly on whether Nano Fire has acted promptly, not on the actions of Hochiki in notifying, or failing to timely notify Plaintiff of their violation of Rule 3.7. Plaintiff's actions (failure to timely pay) led to the withdrawal of the previous Counsel. Plaintiff likely shares responsibility for its relationship with previous counsel deteriorating to the extent that the new counsel was unable to obtain all filings and records until May 2025. Even so, NanoFire's new counsel has had sufficient time to ascertain from the Defendants as to the status of filings provided for in the Scheduling Order before the case was stayed and seek any documents missing from the Plaintiff's records.

In sum, Nano Fire could have, and under controlling law should have, acted sooner. That failure to act in a diligent and timely manner requires denial of this motion.

### C.  Prejudice to Hochiki

Because Nano Fire has not met its burden of proof on "diligence" and "good cause", the Court need not consider whether Hochiki would suffer prejudice if amendment is allowed. However, Hochiki will undeniably be prejudiced if Nano Fire is allowed to keep reinventing its case.  Moreover, because the nature of amendments sought remains unknow and uncertain at this time, Hochiki cannot properly assess the extent of prejudice likely to be suffered by the Defendants. Nevertheless, the mere fact that the case has not progressed beyond early discovery after one year creates uncertainty for Hochiki's business, including uncertain financial liabilities. As discussed above, the delays in these proceedings were caused by: a) Nano Fire's action of initiating ITC proceedings and eventually withdrawing it unceremoniously after much expense

14

and time had been expended by the parties; and b) withholding proper compensation from the previous counsel resulting in their withdrawal from these proceedings followed by extended period of more than six months when the Plaintiff could not apparently secure alternative representation. Nano Fire should not now be perversely rewarded by allowing to belatedly amend its contentions because the case remains in its early stages precisely because of actions undertaken by Plaintiff Nano Fire.

## V.    CONCLUSION

For all of the reasons discussed above, Nano Fire's motion for authorization to include in parties' Second Proposed Scheduling Order, a deadline for plaintiff to amend patent infringement contentions should be denied.

Dated: June 23, 2025

Respectfully submitted,

By: */s/ Sarika Singh*

Sarika Singh
McNeely, Hare & War LLP
12 Roszel Road., Suite C104
Princeton, NJ 08540
Phone: (609) 865-0579

*Attorney for Defendant-Counterclaim*
*Plaintiff Hochiki America Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above-captioned document has been served on all counsel of record through the Court's CM/ECF service on this 23rd day of June 2025.

By: */s/ Sarika Singh*

Sarika Singh